STATE OF CONNECTICUT *v.* LAWRENCE D. MCMURRAY
(13743)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and SANTANIELLO, Js.

Argued November 6, 1990—decision released January 22, 1991

*Todd D. Fernow,* with whom were *John P. Newman* and *Robyn L. Sondak,* certified legal interns, and, on the brief, *Michael R. Sheldon,* for the appellant (defendant).

*Harry Weller,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *John Malone,* senior assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant, Lawrence D. McMurray, was charged in a substitute short form information with one count of conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a (a), one count of attempted murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a (a), one count of acting as an accessory to assault in the first degree in violation of General Statutes §§ 53a-8 and 53a-59 (a) (1), and one count of acting as an accessory to kidnapping in the first degree in violation of General Statutes §§ 53a-8 and 53a-92 (a) (2) (A) and (B).[1] In response to the defendant's motion for a bill of particulars, the state filed a substitute long form information and bill of particulars charging the defendant with the same offenses.

A jury acquitted the defendant of conspiracy to commit murder and attempted murder, but convicted him

---

[1] "[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

General Statutes § 53a-59 (a) (1) provides: "ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."

General Statutes § 53a-92 provides in pertinent part: "KIDNAPPING IN THE FIRST DEGREE. (a) A person is guilty of kidnapping in the first degree when he abducts another person and when . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually; or (B) accomplish or advance the commission of a felony . . . .

"(b) Kidnapping in the first degree is punishable as a class A felony."

as an accessory to both assault in the first degree and kidnapping in the first degree. He was sentenced to twenty years imprisonment for the assault conviction and twenty-five years imprisonment for the kidnapping conviction, with the sentences running consecutively, for a total effective term of forty-five years. The defendant appealed to this court pursuant to General Statutes § 51-199 (b) (3).[2]

The defendant claims that he is entitled to a new trial because: (1) his convictions as an accessory to both assault in the first degree and kidnapping in the first degree must be set aside because the substitute long form information failed to charge him with an essential element of each of those offenses; (2) the trial court's references to the information in its instructions to the jury made it reasonably possible that the jury was misled as to the required mental state for those crimes; and (3) the trial court improperly denied him access to a psychiatric report concerning the victim. We reject each of these claims and affirm the judgment of the trial court.

The charges in this case arose out of an attack perpetrated on Charles Gluck on January 16, 1987. The jury could reasonably have found that, in the fall of 1986, Linda Gluck, the victim's wife, began using cocaine with the defendant. In December, 1986, Linda and the victim agreed to allow the defendant to administer a self-styled "step-down" program designed to reduce gradually Linda's dependence on the drug. On January 13, 1987, the victim and his wife had a

---

[2] General Statutes § 51-199 (b) (3) provides in pertinent part: "The following matters shall be taken directly to the supreme court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years."

heated argument in their home concerning her con-
tinued addiction to cocaine, during which the victim
threatened to strike his wife and to take their children.
The defendant, who was present during this argument,
then threatened the victim, who responded by order-
ing the defendant to leave. Because the victim and his
wife were worried by the defendant's threat, Linda pur-
sued the defendant and persuaded him to return and
reconcile his differences with her husband.

When the victim awoke early the next morning to
go to work, the defendant, who had spent the night at
the Gluck home, told him that he had chased two men
whom he had seen tampering with the propane tanks
at the rear of the house. Because the victim's position
with the Navy required him to be gone overnight, it
was decided that Linda and the two children would stay
at the defendant's home in West Hartford until the
defendant investigated the incident involving the pro-
pane tanks.

Linda and the children stayed with the defendant on
January 14 and 15, 1987. On January 14, 1987, Linda
overheard the defendant, who was talking on the tele-
phone, say, "we have to do something about Charlie."
On the same day the defendant discovered Linda call-
ing her husband to warn him that he was in danger.
The next day he persuaded her to call the victim back
to tell him that everything was fine.

On January 15, the defendant spent a portion of the
day trying to locate Arthur Salley. Linda feared that
the defendant had asked Salley to harm her husband.
At approximately 2 a.m. on January 16, the victim,
armed with a shotgun, came to the defendant's home
in order to pick up his wife and children. Arthur Sal-
ley and his brother, Howard Salley, arrived at the
defendant's home shortly thereafter. Inside the home,

the defendant handcuffed the victim when the victim's attention was diverted. As the defendant did so, the victim jerked backwards and fell unconscious when the handcuffs hit him in the face. Arthur, with the assistance of his brother, put the victim into Arthur's motor vehicle.

After the defendant told Arthur that the victim's car had to be disposed of, Arthur drove off in his vehicle with the victim while Howard followed in the victim's car. During this ride Arthur told the victim, who was semiconscious, that his wife wanted to stay where she was, and that he was going to teach the victim a lesson for interfering with the wrong people. After leaving the victim's car in a parking lot, Howard joined his brother and they drove the victim to Keney Park in Hartford where the victim tried to escape when he was taken out of the vehicle. Arthur, however, caught the victim and hit him three times with a metal "j-hook,"[3] inflicting a blow that pierced his skull. The two brothers then left the victim lying in the park.[4] The victim subsequently managed to revive sufficiently to get help at a nearby apartment building. As a result of the assault, the victim suffered serious injuries, including damage to the area of the brain that controls speech.

## I

The defendant argues that counts three and four[5] of the substitute long form information failed to charge

---

[3] A j-hook is an iron bar bent into the shape of a hook. It is used in towing cars and trucks.

[4] Arthur Salley pleaded guilty to the crimes of assault in the first degree and kidnapping in the first degree.

[5] The third count of the substitute long form information provided: "And the said Attorney further accuses the said Lawrence D. McMurray of ASSAULT IN THE FIRST DEGREE and charges that in the vicinity of 44 Vine Hill Road within the Town of West Hartford, on or about the 15th and 16th days of January, 1987, the said Lawrence D. McMurray, acting with the mental state required for commission of the crime of ASSAULT

an essential element, namely the requisite mental state, of the offenses of accessory to first degree assault and accessory to first degree kidnapping, and that this alleged omission violated his right to be informed of the nature and cause of the accusation against him guaranteed under the sixth and fourteenth amendments to the United States constitution and article first, § 8 of the Connecticut constitution.[6] The defendant asserts that these counts failed to charge that he, personally, had to possess the specific intent required for commission of assault in the first degree and kidnapping in the first degree. We disagree.

IN THE FIRST DEGREE, did solicit, command, importune and intentionally aid Arthur K. Salley and others to engage in conduct which constituted the crime of ASSAULT IN THE FIRST DEGREE in that the said Lawrence D. McMurray or others, with intent to cause serious physical injury to Charles Gluck of Voluntown, caused such injury to the said Charles Gluck by means of a dangerous instrument, which occurred in the vicinity of 44 Vine Hill Road within the Town of West Hartford and in the vicinity of Keney Park within the City of Hartford during the early morning hours of the 16th day of January, 1987, in violation of Sections 53a-8 and 53a-59 (a) (1) of the General Statutes."

The fourth count of the substitute long form information provided: "And the said Attorney further accuses the said Lawrence D. McMurray of KIDNAPPING IN THE FIRST DEGREE and charges that in the vicinity of 44 Vine Hill Road within the Town of West Hartford, on or about the 15th and 16th days of January, 1987, the said Lawrence D. McMurray, acting with the mental state required for commission of the crime of Kidnapping in the First Degree, did solicit, command, importune and intentionally aid Arthur K. Salley and others to engage in conduct which constituted the crime of Kidnapping in the First Degree in that the said Lawrence D. McMurray or others abducted Charles Gluck of Voluntown and restrained the said Charles Gluck with intent to inflict injury upon him and accomplish the commission of a felony, which occurred in the vicinity of 44 Vine Hill Road within the the [sic] Town of West Hartford and in the vicinity of Keney Park within the City of Hartford during the early morning hours of the 16th day of January, 1987, in violation of Sections 53a-8 and 53a-92 (a) (2) (A) [and] (B) of the General Statutes."

[6] Because the defendant does not provide a separate analysis of his rights under the Connecticut constitution, we shall limit our consideration of this issue to the defendant's rights under the federal constitution. *State* v. *Flanders,* 214 Conn. 493, 500 n.4, 572 A.2d 983 (1990); *State* v. *Mercer,* 208 Conn. 52, 67 n.9, 544 A.2d 611 (1988).

The underlying purpose of the constitutional right to be informed of the nature and cause of a criminal charge is to inform "the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise" and to make the charge "definite enough to enable [the defendant] to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . ." *State* v. *Sumner,* 178 Conn. 163, 168, 422 A.2d 299 (1979), citing *Russell* v. *United States,* 369 U.S. 749, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962). The defendant does not claim that the alleged failure by the state to charge an essential element of these offenses caused any surprise or prejudiced his defense in any way, nor does he contend that the information was insufficient for double jeopardy purposes. He does contend, however, that because of the defect in the information, the trial court lacked jurisdiction to impose a valid judgment, regardless of whether there was any prejudice.[7] Although the defendant raises this claim for the first time on appeal, it is reviewable pursuant to Practice Book § 811.[8]

---

[7] Because we conclude that the third and fourth counts of the information did not fail to charge an essential element of these offenses, we do not consider whether a trial court would have jurisdiction if a substitute long form information did not allege all the essential elements of a crime, but did include a citation to the relevant statute, and if the defendant is not prejudiced by this omission. Compare *State* v. *Roque,* 190 Conn. 143, 156, 460 A.2d 26 (1983) (defendant must demonstrate prejudice to challenge information); *State* v. *Coleman,* 167 Conn. 260, 280–81, 355 A.2d 11 (1974) (*Bogdanski, J.,* concurring) (nonprejudicial failure to charge intent element in supplemental bill of particulars does not deprive court of jurisdiction where short form information itself is not defective).

[8] "[Practice Book] Sec. 811. ——TIME FOR MAKING PRETRIAL MOTIONS OR REQUESTS

"Unless otherwise provided by these rules or statute, all pretrial motions or requests shall be made not later than ten days after the entry of a plea in the court where the case will be tried, or, for good cause shown, at such later time as the judicial authority may fix. However, defenses and objec-

When reviewing a claim, not raised prior to the verdict, that an information fails to charge all the essential elements of an offense, we must construe the information liberally in favor of the state. See *Hagner* v. *United States,* 285 U.S. 427, 433, 52 S. Ct. 417, 76 L. Ed. 861 (1932); *United States* v. *Hooker,* 841 F.2d 1225, 1228-29 (4th Cir. 1988); *United States* v. *Previte,* 648 F.2d 73, 80 (1st Cir. 1981); *United States* v. *Fistel,* 460 F.2d 157, 161 (2d Cir. 1972). Under the applicable standard of review, a conviction based upon a challenged information is valid unless the information is " 'so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had.' " *United States* v. *Fistel,* supra, 161, quoting *United States* v. *Thompson,* 356 F.2d 216, 226 (2d Cir. 1965), cert. denied, 384 U.S. 964, 86 S. Ct. 1591, 16 L. Ed. 2d 675 (1966).

Because the defendant makes the same argument in alleging that both the third and fourth counts of the information fail to contain an essential element of the charged offenses, namely specific intent,[9] and because both counts are similarly worded, our analysis of the third count will also dispose of the defendant's claim with respect to the fourth count. The relevant portion of the third count states that "Lawrence D. McMurray,

tions alleging lack of jurisdiction over the offense charged or failure of the indictment or information to charge an offense may be raised by the defendant or noticed by the judicial authority at any time during the pendency of the proceedings."

[9] To be convicted under the criminal accessory statute, General Statutes § 53a-8, the defendant must be found to have acted with the mental state required for commission of the underlying offense. In order to commit assault in the first degree under General Statutes § 53a-59 (a) (1), one must act with the intent to cause serious physical injury to another person. To commit kidnapping in the first degree under General Statutes § 53a-92 (a) (2) (A) and (B), as charged in the information, one must act with the intent to inflict physical injury on the person abducted and to accomplish the commission of a felony.

acting with the mental state required for commission of the crime of ASSAULT IN THE FIRST DEGREE, did solicit, command, importune and intentionally aid Arthur K. Salley and others to engage in conduct which constituted the crime of ASSAULT IN THE FIRST DEGREE *in that the said Lawrence D. McMurray or others, with intent to cause serious physical injury . . . caused such injury . . . by means of a dangerous instrument . . . .*" (Emphasis added.) The defendant focuses on the emphasized language in arguing that the information must be interpreted to state that the defendant could be convicted as an accessory to assault even if he did not personally intend to cause serious physical injury to the victim, as long as one of the principals possessed that intent.

The defendant's argument is without merit. He concedes that in order to prevail on this claim he must demonstrate that his interpretation is the *only* reasonable interpretation of the information. This clearly is not the case. The first part of the third count of the information, incorporating the language of the accessory statute, § 53a-8, states that the defendant was "acting with the mental state required for commission of the crime of ASSAULT IN THE FIRST DEGREE." The portion of the information on which the defendant focuses describes only the conduct of the principals and the requisite mental state for assault in the first degree. A reasonable interpretation of the information read as a whole is that the mental state referred to in the first portion of the information is the intent to cause serious physical injury, and that the defendant personally possessed such intent. The defendant's hypertechnical argument asks this court to ignore the relevant standard of review by reading a selected portion of the information in isolation from the information as a whole. The tenuousness of the defendant's

claim that his interpretation is the *only* reasonable one is highlighted by the failure of either the defendant or the trial court to raise this issue at any point during the trial.

Furthermore, the defendant concedes that a finding that the third and fourth counts are ambiguous on the requisite mental state is insufficient for him to prevail. See *United States* v. *Hooker,* supra, 1228–29; *United States* v. *Fistel,* supra, 161; *United States* v. *Thompson,* supra, 226. Although it appears to this court that the only sensible interpretation of the language of the third and fourth counts of the long form information is that the defendant was required to possess the specific intent for the charged offenses,[10] we need not so hold. Even if we assume, arguendo, that the language of the counts in question is ambiguous as to the element of intent, we cannot say that, construed liberally, the information fails to charge the intent element of assault in the first degree and kidnapping in the first degree. See *United States* v. *Fistel,* supra; *United States* v. *Thompson,* supra. The defendant cannot prevail on this issue because, at best, his argument amounts to a claim that the information was "unskillfully or imprecisely drafted," rather than a claim that the information "completely omitted to aver an essential element

---

[10] We do not address the state's argument that the reference in the substitute long form information to the relevant statutes under which the defendant was charged satisfies the requirement that the information include all the essential elements of the offenses. See *United States* v. *Hooker,* 841 F.2d 1225, 1227–28 (4th Cir. 1988) (noting that a majority of the United States Circuit Courts of Appeal and a majority of the states have ruled that a mere statutory citation in the indictment or information does not cure a failure to allege all the essential elements of a crime); compare *State* v. *Coleman,* 167 Conn. 260, 269–70, 355 A.2d 11 (1974) (statutory citation in short form information found sufficient to inform defendant of intent element of offense where bill of particulars was alleged to have omitted that element).

of the offense[s] charged." *State* v. *Coleman,* 167 Conn. 260, 278, 355 A.2d 11 (1974) (*Bogdanski, J.,* concurring).

## II

The defendant's second claim of error is related to his first. He asserts that the trial court's references to the information in its instructions to the jury concerning the third and fourth counts made it reasonably possible that the jury was misled as to the mental state required for a conviction on those counts. Because the defendant first raises this claim on appeal, this claim would ordinarily not be reviewable under the provisions of Practice Book § 852.[11] The defendant's contention, however, that the court's instructions failed to inform the jury adequately of all the essential elements of the crimes charged raises the possibility of a due process violation affecting the fairness of the trial. We have held that such unpreserved constitutional claims are reviewable on appeal, but we have limited the scope of such review because "[d]ue process is not to be regarded as a giant constitutional vacuum cleaner which sucks up any claims of error which may occur to a party upon microscopic examination of the trial record." *State* v. *Kurvin,* 186 Conn. 555, 564, 442 A.2d 1327 (1982). Our review of such claims is limited to determining whether, "considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled." *State* v.

---

[11] "[Practice Book] "Sec. 852. NECESSITY FOR REQUESTS TO CHARGE AND EXCEPTIONS

"The supreme court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. Upon request, opportunity shall be given to present the exception out of the hearing of the jury."

*Zayas,* 195 Conn. 611, 617, 490 A.2d 68 (1985); *State v. Sinclair,* 197 Conn. 574, 581, 500 A.2d 539 (1985); *State v. Kurvin,* supra, 565.[12]

The trial court's instructions to the jury included a thorough review of the intent element under an accessory theory of liability for both the offenses of assault in the first degree and kidnapping in the first degree. During the course of the charge, the trial court referred to the substitute long form information five times and told the jury that the information would be available for its use during its deliberations. The trial court also told the jury that any questions concerning the elements of the offenses should be resolved by referring first to the information because it contained the language of the statutes, but if questions remained, the court could be asked to reread the portions of the charge outlining the elements.

---

[12] In *State v. Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989), we held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.)

The state asserts that the merits of this claim are not reviewable under the first prong of *Golding* because the record does not indicate whether the jury was confused about the requisite intent. Because the relevant issue is whether it is reasonably possible that the jury was misled; *State v. Sinclair,* 197 Conn. 574, 581, 500 A.2d 539 (1985); our inquiry is an objective one and there is no need for the record to provide evidence that the jury actually was confused in order for us to review the claim. The record, which includes the trial court's charge to the jury, the jury's questions, and the court's responses to these questions, is adequate for review.

The state also argues that this claim is not reviewable because it is not of constitutional magnitude. Because the "reasonable possibility" test governs whether there is a due process violation, we cannot determine whether the claim is of constitutional magnitude without examining the merits. We therefore focus on the third *Golding* requirement, namely, whether there is a clear constitutional violation that deprived the defendant of a fair trial.

Shortly after beginning its deliberations, the jury requested reinstruction on the elements of the offenses, and the court once again provided a correct statement of all the essential elements of each of the crimes. After being reinstructed on the elements, the jury asked to have the elements in writing. The trial court stated that it could not provide the elements in writing, but indicated that the information contained the elements of the offenses as set forth in the statutes and reminded the jury that it could ask the court to reread the instructions on the elements at any time. The jury asked no further questions concerning the elements of the offenses and received no further instructions before returning its verdict.

The defendant concedes that the trial court properly instructed the jury on each of the essential elements of the third and fourth counts, including intent, both in its charge and in its response to the jury's request to be reinstructed on the elements of the offenses. He argues, however, that the trial court's references to the information made it reasonably possible that the jury convicted the defendant on the third and fourth counts without finding that the defendant personally possessed the specific intent required to commit those offenses. We disagree.

We first note that this claim is dependent upon our finding that the information was deficient concerning the element of intent required for conviction of the third and fourth counts. If we were to find that no reasonable juror could have been misled by the information as to the requisite intent, the defendant could not prevail on this claim. As we noted earlier, it appears to this court that there is no ambiguity in the information, but once again we need not rely on this ground. If it is assumed, arguendo, that the information was

ambiguous concerning the requisite mental state for commission of the offenses of accessory to assault in the first degree and kidnapping in the first degree, any ambiguity was cured by the trial court's twice having instructed the jury properly on the intent element of these crimes. A trial court's main and supplemental instructions to the jury must be reviewed as a whole. *State* v. *Cannon,* 185 Conn. 260, 269, 440 A.2d 927 (1981); *State* v. *Reed,* 174 Conn. 287, 308, 386 A.2d 243 (1978). Reviewing the instructions as a whole, we conclude that it was not reasonably possible that the jury was misled on the requisite intent element of the third and fourth counts.

### III

The defendant also claims that his right to confront the witnesses against him guaranteed by the sixth and fourteenth amendments to the United States constitution and article first, § 8 of the Connecticut constitution was violated by the trial court's having denied him access to a psychiatric report concerning the victim.[13] We disagree.

This court has noted repeatedly the need to balance a witness' statutory privilege to keep psychiatric records confidential[14] against a defendant's rights under the confrontation clause. See, e.g., *State* v. *Herring,*

---

[13] The defendant has not provided a separate analysis of this claim under the Connecticut constitution, and therefore we consider only his federal constitutional claim. See footnote 6, supra. Furthermore, we do not address whether a defendant's right to discredit witnesses through the use of the their psychiatric records is derived from the confrontation clause of the sixth amendment, the due process clause of the fourteenth amendment, or the due process or confrontation clauses of the Connecticut constitution. See *State* v. *D'Ambrosio,* 212 Conn. 50, 57 n.5, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990).

[14] General Statutes § 52-146e (a) provides in pertinent part that, with certain exceptions not applicable in this case, "[a]ll communications and records as defined in section 52-146d shall be confidential . . . ." General

210 Conn. 78, 108–109, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). The procedure for determining whether a defendant should be granted access to the psychiatric records of a witness is well established. "If, for the purposes of cross-examination, a defendant believes that certain privileged records would disclose information especially probative of a witness' ability to comprehend, know or correctly relate the truth, he may, out of the jury's presence, attempt to make a preliminary showing that 'there is a reasonable ground to believe' that the failure to produce the records would likely impair his right to impeach the witness. . . . If in the trial court's judgment the defendant successfully makes this showing, the state must then obtain the witness' permission for the court to inspect the records in camera. A witness' refusal to consent to such an in camera inspection entitles the defendant to have the witness' testimony stricken. . . .

"Upon inspecting the records in camera, the trial court must determine whether the records are especially probative of the witness' capacity to relate the truth or to observe, recollect and narrate relevant occurrences. . . . If the court determines that the records are probative, the state must obtain the witness' further waiver of his privilege concerning the relevant portions of the records for release to the defendant, or have the witness' testimony stricken. If the court discovers no probative and impeaching material, the entire record of the proceeding must be sealed and preserved for possible appellate review. . . . Once the trial court has made its inspection, the court's determina-

Statutes § 52-146d (2) provides in pertinent part that " '[c]ommunications and records' means all oral and written communications and records thereof relating to diagnosis or treatment of a patient's mental condition between the patient and a psychiatrist . . . ."

tion of a defendant's access to the witness' records lies in the court's sound discretion, which we will not disturb unless abused." (Citations omitted.) *State* v. *D'Ambrosio,* 212 Conn. 50, 58–59, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990).

The only psychiatric record at issue in this appeal is a report concerning a psychiatric consultation by the victim on March 26, 1987, one day prior to the victim's giving a written statement to the police concerning the events of January 16, 1987.[15] Because the victim could not remember the general purpose of this consultation, the trial court concluded that an in camera inspection of the psychiatric report was necessary. After obtaining the victim's permission, the court reviewed the report and found that "there is nothing which either was said by the witness, Mr. Gluck, nor anything indicated by the opinion to interfere with his giving evidence in this case."

Our review of the psychiatric record at issue leads us to conclude that the trial court did not abuse its discretion[16] in denying the defendant access to this rec-

---

[15] The defendant also sought access to psychiatric records concerning consultations while the victim was recuperating at Bethesda Naval Hospital in Maryland in February and March, 1987, and a consultation in Connecticut in May, 1987. The trial court denied him access to these records because it found that the defendant had failed to make a preliminary showing that there was a reasonable ground to believe that the denial of access would impair his right to impeach the witness. The defendant has not appealed this ruling.

[16] The defendant claims that the "abuse of discretion" standard does not apply to this case because he asserts that the trial court applied the wrong standard in determining whether to grant him access to the record in question. The defendant contends that the trial court's statement that "there is nothing which either was said by the witness, Mr. Gluck, nor anything indicated by the opinion *to interfere with his giving evidence in this case*" (emphasis added) indicates that the court reviewed this record in terms of

ord because it does not contain information that is especially probative of the victim's "ability to comprehend, know or correctly relate the truth." *State* v. *D'Ambrosio,* supra, 58. On direct examination the victim testified that during his hospitalization immediately after the assault his memory of the incident was limited. He also testified that his recollection of the assault was sketchy until several weeks after the incident when he was watching a movie and the events came back to him "like one continuous film." In addition to noting that the trauma he suffered upon remembering these events forced him to return to the hospital, the victim also described the mental impairments he suffers as a result of the assault, including his difficulty in expressing his thoughts and his memory problems. On cross-examination of the victim, the defendant was able to question the victim fully about the circumstances surrounding his recollection of the assault, and the victim denied any suggestion that either the police or his wife had helped him in formulating his memory of the incident. After reviewing the psychiatric report in question, we conclude that the report would not have added weight to the defendant's extensive cross-examination of the victim and that the trial court did not abuse its discretion in denying the defendant access.

The judgment is affirmed.

In this opinion the other justices concurred.

---

what information it provided on the victim's competence rather than whether the record reflected on the victim's ability to comprehend, know or relate the truth. We disagree.

Although the trial court's conclusion could have been stated in more legally precise terms, our review of the record reveals that the trial court was well acquainted with the procedures and standards to be applied in determining whether to grant a defendant access to psychiatric records. Furthermore, we note that the defendant failed to object when the court issued its finding in these terms and thereby contributed to any lack of clarity in the record.