STATE OF CONNECTICUT *v.* DEAN
STEVEN VLAHOS
(AC 30217)

Beach, Sheldon and Borden, Js.

Argued June 5—officially released October 2, 2012

*Dean Steven Vlahos*, pro se, the appellant (defendant).

*James M. Ralls*, senior assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Sharmese L. Hodge*, assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Dean Steven Vlahos, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle without a driver's license in violation of General Statutes (Rev. to 2007) § 14-36 (a). Pursuant to a part B information, the defendant's sentence was enhanced by virtue of § 14-36 (h) (2) (B). The defendant claims that (1) the information failed to state an offense, (2) the state erred in charging him under § 14-36 (a), (3) the court's instructions misled the jury, (4) the court erred in denying his motion for a bill of particulars and (5) the court erred in denying his motion for a judgment of acquittal on the

amended part B information. We affirm the judgment of the trial court.

The following facts, as the jury reasonably could have found, and procedural history are relevant. The defendant obtained his first driver's license in 1982. On March 7, 2001, the defendant's license was suspended for one year due to a conviction for operating a motor vehicle while his license was under suspension. On March 14, 2001, his license was suspended for five years due to a second conviction for operating a motor vehicle while his license was under suspension. On August 15, 2001, his license was suspended for five years due to a third conviction for operating a motor vehicle while his license was under suspension.[1] These periods of suspension ended at the latest on August 15, 2006.[2]

On February 6, 2007, at approximately 8:26 p.m., Gregory Topa, an officer with the Danbury police department, stopped the defendant for a motor vehicle violation. When Topa asked the defendant for his driver's license, registration and insurance, the defendant responded that he did not have a driver's license, that his vehicle was unregistered and that he did not have

---

[1] Evidence submitted at the hearing on the part B information showed that in January, 2003, the defendant was convicted of operating under a suspension in violation of General Statutes § 14-215 and operating without a license in violation of § 14-36 (a). Evidence submitted at the trial on the part A information showed that the defendant's license was suspended in 2003. A motor vehicle analyst with the department of motor vehicles testified that the suspension was removed at the defendant's request when that case was appealed. Although the defendant's 2003 convictions were affirmed in 2004; State v. Vlahos, 81 Conn. App. 904, 841 A.2d 1238 (2004); the department apparently never reinstated the 2003 suspension.

[2] In 2005, General Statutes § 14-111 (b) was amended to reduce the five year suspension period to two years. The defendant argues that the department of motor vehicles did not notify him when this new law went into effect. Regardless of whether the defendant's suspension ended on August 15, 2003, or in August, 2006, the defendant had not renewed his license when he was stopped by a police officer on February 6, 2007, and his effective suspension terminated more than sixty days prior to his arrest.

an insurance card. At the time of the incident, the defendant's license had not been reinstated; he did not reinstate his license until February 27, 2007. The defendant was arrested.

By way of a substitute long form part A information, the state charged the defendant with operating a motor vehicle without a license in violation of § 14-36 (a).[3] By way of a substitute part B information, the state charged the defendant with previously having been convicted of operating a motor vehicle while his license was under suspension in violation of General Statutes §§ 14-215 (a) and 14-36 (a). Following a jury trial on the part A information, the jury found the defendant guilty of operating a motor vehicle without a license. Following a court trial on the part B information, the court found the defendant guilty. The court sentenced the defendant to ninety days incarceration.[4] This appeal followed.

I

The defendant first claims that the information failed to state an offense because an element of § 14-36 (a),[5]

[3] The defendant was also charged with operation of an unregistered motor vehicle in violation of General Statutes § 14-12 (a). He pleaded guilty to this charge, and a judgment of guilty was rendered in accordance with the plea. In connection with this charge, the court imposed a $50 fine, which the court remitted.

The defendant was also charged with operation of a motor vehicle without insurance in violation of General Statutes § 14-213b and making an improper turn in violation of General Statutes § 14-242. These counts were nolled.

[4] General Statutes (Rev. to 2007) § 14-36 (h) (2) (B) provides that a person in the defendant's circumstances "shall be sentenced to a term of imprisonment of ninety days which may not be suspended or reduced in any manner." The record indicates that the court imposed a "term of ninety days to serve, of which ninety days are a mandatory minimum."

In 2009, subsection (h) was editorially redesignated by the revisors of the General Statutes as subsection (i).

[5] General Statutes § 14-36 (a) provides in relevant part: "[N]o person shall operate a motor vehicle on any public highway of this state . . . until such person has obtained a motor vehicle operator's license."

operation on a public highway, was omitted.[6] We disagree.

The one count substitute long form information (substitute information) charged the defendant with "operating a motor vehicle without a license and charge[d] that in the city of Danbury on or about the 6th day of February 2007 at approximately 8:26 p.m., [the defendant] did operate a motor vehicle without a license in violation of Connecticut General Statute § 14-36 (a)." Section 14-36 (a) provides in relevant part that "no person shall operate a motor vehicle on any public highway of this state or private road on which a speed limit has been established in accordance with subsection (a) of [General Statutes §] 14-218a until such person has obtained a motor vehicle operator's license."

"The underlying purpose of the constitutional right to be informed of the nature and cause of a criminal charge is to inform the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise and to make the charge definite enough to enable [the defendant] to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . . When reviewing a claim, not raised prior to the verdict,[7] that an information fails to charge all the essential elements of an offense, we must construe the information liberally in favor of the state. . . . Under the applicable standard of review, a conviction based upon a challenged information is valid unless the information is so

---

[6] The defendant further asserts that the defect is jurisdictional and thus no other prejudice need be shown. We need not address this issue. Whether such a defect is jurisdictional or not, the defendant's claim fails because the information was not deficient.

[7] Practice Book § 41-5 provides in relevant part that "defenses and objections alleging lack of jurisdiction over the offense charged or failure of the information to charge an offense may be raised by the defendant or noticed by the judicial authority at any time during the pendency of the proceedings." See also State v. McMurray, 217 Conn. 243, 249–50 n.8, 585 A.2d 677 (1991).

obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had." (Citations omitted; internal quotation marks omitted.) *State* v. *McMurray*, 217 Conn. 243, 249–50, 585 A.2d 677 (1991).

In *State* v. *Reed*, 55 Conn. App. 170, 740 A.2d 383, cert. denied, 251 Conn. 921, 742 A.2d 361 (1999), this court addressed a case in which the defendant was charged with sexual assault in the first degree. The long form information filed by the state in that case alleged that the defendant had "engaged in sexual intercourse with another person and such other person was under thirteen . . . years of age, in violation of section 53a-70 (a) (2) of the Connecticut General Statutes." (Internal quotation marks omitted.) Id., 175. In rejecting the plaintiff's claim that this allegation failed to set forth the essential elements of sexual assault in the first degree, this court stated: "Neither information in this case specifically articulated each of the elements required to prove sexual assault in the first degree. *The long form information, however, provided the defendant with the exact section and subsection of the statute under which he was charged.* . . . We conclude that a reasonable construction of the information shows that it charged the defendant with the offense for which he was convicted. Moreover, the information was sufficiently precise to enable him adequately to prepare his defense." (Emphasis added.) Id., 176–77.

In this case, the substitute information did not specifically state the element of operation on a public highway. It did, however, provide the defendant with the statutory section under which he was charged as well as the time and place of the incident. The state's inclusion of these items in the information was sufficient to inform the defendant of the charges against him.

## II

The defendant next claims that the state erred in charging him under § 14-36 (a), rather than under General Statutes § 14-41 (c), driving with an expired license, or General Statutes § 14-215b, driving after the expiration of a period of suspension. We disagree.

We first set forth our standard of review. "The issue in this case . . . raises a question of statutory construction, which is a [question] of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, [we] first . . . consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *State* v. *Marsh & McLennan Cos.*, 286 Conn. 454, 464–65, 944 A.2d 315 (2008).

The defendant argues that it was improper for the state to charge him with violating § 14-36 (a) because that statute does not apply to persons who previously have obtained valid Connecticut driver's licenses but

only to persons who have never obtained valid Connecticut driver's licenses. He argues that the language of § 14-36 (a)—that a person shall not operate a motor vehicle on a public highway "until such person has obtained a motor vehicle operator's license"—prohibits a person from operating a motor vehicle on a public highway until that person has obtained his or her first driver's license. He claims that this interpretation is buttressed by § 14-36 (e),[8] which sets forth the requirements for obtaining an initial driver's license. Once a person has satisfied the requirements of § 14-36 (e) for obtaining an initial driver's license, he argues, that person has satisfied the requirements of § 14-36 (a). He claims that, because he had obtained a driver's license in 1982, he satisfied the requirements of § 14-36 (a) for all time and, accordingly, cannot logically be charged under that statute on the facts of this case. He argues that if the state wanted to subject a person, who operated a motor vehicle without renewing his license after the period of license suspension had ended, to the penalties of § 14-36, the state would have to charge and to prove a violation of § 14-41 or § 14-215b.

We conclude that, on the facts of this case, the state's choice to charge a violation of § 14-36 (a) was not illogical and that the evidence was sufficient to sustain the conviction. Section 14-36 (a) provides in relevant part that "no person shall operate a motor vehicle on any public highway of this state or private road on which a speed limit has been established . . . until such person has obtained a motor vehicle operator's license." The language of the statute does not limit its applicability to only those persons who have not obtained an

[8] General Statutes § 14-36 (e) provides in relevant part: "(1) No motor vehicle operator's license shall be issued until (A) the applicant signs and files with the commissioner an application under oath, or made subject to penalties for false statement in accordance with section 53a-157b, and (B) the commissioner is satisfied that the applicant is sixteen years of age or older and is a suitable person to receive the license. . . ."

initial driver's license. The legislature in § 14-36 (e) (2) set forth the proof needed by an applicant for a new driver's license in order to establish his or her identity, and set forth in § 14-36 (e) (3) the requirements that an "applicant who has not previously held a Connecticut motor vehicle operator's license" must satisfy before obtaining a license. Accordingly, the legislature knew how to limit the applicability of a statute to applicants for initial driver's licenses, but did not include any such limiting language in § 14-36 (a). See *State* v. *Fernando A.*, 294 Conn. 1, 21, 981 A.2d 427 (2009) ("[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omitted]).

Additionally, § 14-41 (c)[9] provides that when a person has allowed a license to expire, he or she has a grace period of sixty days to renew, and the penalty for driving during that grace period is minimal. In contrast, "section 14-36 shall apply after the sixty-day period." General Statutes § 14-41 (c). The legislature, therefore, expressly stated that § 14-36 applies to situations other than failure to obtain an initial license. Similarly, § 14-215b refers to § 14-36 in terms of "operating . . . without a license . . . ." General Statutes § 14-215b.

Contrary to the defendant's contention, the state was not required to charge him under §§ 14-41 or 14-215b. Neither section applies to a person who operates a

---

[9] General Statutes § 14-41 (c) provides in relevant part that "[a]ny previously licensed operator who operates a motor vehicle within sixty days after the expiration date of the operator's license without obtaining a renewal of the license shall be deemed to have failed to renew a motor vehicle operator's license and shall be fined . . . . Any operator so charged shall not be prosecuted under section 14-36 for the same act constituting a violation under this section but section 14-36 shall apply after the sixty-day period."

motor vehicle more than sixty days after his or her license has expired or after his or her license suspension has ended. Section 14-41 (c) provides that "section 14-36 shall" apply to a previously licensed operator who operates a motor vehicle after the sixty day period following the expiration of his or her operator's license. Section 14-215b provides that a person whose motor vehicle operator's license has been suspended and who operates a motor vehicle more than sixty days after the expiration of such period of suspension without obtaining the reinstatement of such license shall "be subject to the penalty for operating a motor vehicle without a license under section 14-36 . . . ."[10] Both statutes clearly provide that after a sixty day period, § 14-36 applies.[11]

The overall legislative scheme is quite plain and unambiguous. Section 14-36 (a) provides that no person shall operate a motor vehicle on a public highway until such person has obtained an operator's license. If one then loses driving privileges, through either suspension or inadvertence, one may not operate again until he or she has obtained a license. Sections 14-215b and 14-41 provide exceptions, but functionally one's status reverts to that of an unlicensed driver until one becomes licensed again. Because the defendant was operating a motor vehicle without a valid license, § 14-36 applies.

[10] General Statutes § 14-215b provides that "[a]ny person whose motor vehicle operator's license has been suspended who operates a motor vehicle after the expiration of such period of suspension without obtaining the reinstatement of such license shall (1) during the first sixty days after such expiration, be deemed to have failed to renew such license and be subject to the penalty for failure to renew a motor vehicle operator's license under subsection (c) of section 14-41, and (2) after said sixty-day period, be subject to the penalty for operating a motor vehicle without a license under section 14-36. Any operator so charged shall not be prosecuted under section 14-215 for the same act constituting a violation under this section."

[11] General Statutes § 14-215b is textually less clear than § 14-41 (c), as § 14-215b provides that "the penalty" under § 14-36 is applicable to operating without a license after the grace period. The difference does not undermine the ability to proceed under § 14-36.

III

The defendant next claims that the court's jury instructions misled the jury as to the elements of § 14-36 (a). We disagree.

"When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) *State* v. *Betances*, 265 Conn. 493, 509–10, 828 A.2d 1248 (2003).

The court instructed the jury as to the elements of § 14-36 (a) as follows: "It is the burden of the state to prove beyond a reasonable doubt each fact, which is essential to obtain a conviction under the statute allegedly violated, § 14-36 (a). . . . The defendant in this information is charged with the operation of a motor vehicle, without a license, in violation of Connecticut General Statutes § 14-36 (a). This statute, insofar as it is applicable to this case reads as follows: No person

shall operate a motor vehicle on any public highway of this state or private road on which a speed limit has been established in accordance with subsection (a) of § 14-218a, until such person has obtained a motor vehicle operator's license." The court then defined the term "operator's license" under General Statutes § 14-1.

The court continued: "You have heard evidence about license suspensions as well. Connecticut General Statutes § 14-215 (a) provides as a matter of law, no person to whom an operator's license has been refused or whose operator's license or right to operate a motor vehicle in this state has been suspended or revoked, shall operate any motor vehicle during the period of such refusal, suspension or revocation. It is important that you be aware of these statutory definitions and rules in order to decide whether the defendant has, in fact, violated Connecticut General Statutes § 14-36 (a). As I advised you earlier, this statute states, no person shall operate a motor vehicle on a public highway until such person has . . . obtained a motor vehicle operator's license. What does the phrase, obtain a motor vehicle operator's license, mean? This same statute, § 14-36, also sets forth in subsection (e) (3) the requirements for obtaining a motor vehicle operator's license as follows: Before granting a license to any applicant, who has not operated a motor vehicle, during the preceding two years, the commissioner [of motor vehicles] shall require the applicant to demonstrate personally to the commissioner, in such manner as the commissioner directs, that the applicant is a proper person to operate motor vehicles of the class for which such applicant has applied, has sufficient knowledge of the mechanism of the motor vehicles to ensure their safe operation by him or her and has satisfactory knowledge of the laws concerning motor vehicles and the rules of the road. When the commissioner is satisfied as to the ability

and competency of an applicant, the commissioner may issue to such applicant a license . . . ."

The court instructed the jury that § 14-36 (a) is a general intent statute. The court then said: "Thus, if you find on the facts presented that as of February 6, 2007, the defendant . . . was operating a motor vehicle and at that time, he had not obtained a valid motor vehicle operator's license, as defined by Connecticut General Statutes § 14-1 (23), because he had not complied with the statutory requirements for obtaining a motor vehicle operator's license, required by Connecticut General Statutes § 14-36 (e) (3), then you must find the defendant guilty of [a] violation of Connecticut General Statutes § 14-36 (a), the crime charged."

The defendant claims that the jury instructions did not clearly set forth the essential elements of § 14-36 (a). He argues that the court erred by explaining license suspension under § 14-215 (a) and license requirements under § 14-36 (e) (3), both statutes with which the defendant had not been charged in the part A information. He argues that "[f]rom the instruction that it was 'important' to consider §§ 14-215 (a) and 14-36 (e) (3) to determine if [the] defendant was guilty of a violation of § 14-36 (a), and without explaining how or why those statutes were relevant or should be applied to the evidence in the case, the court erroneously failed to properly interpret § 14-36 (a) and failed to furnish the jury with adequate guidance in applying § 14-36 (a) to the evidence in the case."

The jury was not likely to have been misled because the court clearly instructed the jury as to the elements of § 14-36 (a).[12] It instructed several times that the defendant was charged with a violation of § 14-36 (a) and

___

[12] The defendant further argues that the court failed to instruct the jury that to be found guilty of § 14-36 (a), it had to find that he had never obtained a valid license, that his license had become invalid or that operation on a public highway was an essential element. In part II of this opinion, we rejected the defendant's argument that § 14-36 (a) only applies to persons

that that statute provided that no person shall operate a motor vehicle on a public highway or private road on which the speed limit has been established until such person has obtained a motor vehicle operator's license. The elements were clearly stated to the jury.

Although the instructions regarding license suspensions under § 14-215 (a) and the requirements for obtaining a license under § 14-36 (e) (3) were extraneous and not essential to the charge, the additional instructions did not omit any elements from § 14-36 (a). The instruction regarding § 14-215 (a) gave the jury an example of one specific way of violating § 14-36 (a). The instruction regarding § 14-36 (e) (3) provided the jury with details for the requirements for reinstatement of a driver's license after two years; the jury was informed that reinstatement was not automatic. The reference to procedures for reinstatement did not diminish the state's burden. See *State* v. *Clark*, 264 Conn. 723, 736, 826 A.2d 128 (2003) (inclusion of additional elements in charge was, if anything, detrimental to state rather than defendant); see also *State* v. *Rosado*, 107 Conn. App. 517, 537, 945 A.2d 1028 (defendant could not prevail on claim that instruction on additional element misled jury), cert. denied, 287 Conn. 919, 951 A.2d 571 (2008).

IV

The defendant next claims that the court erred in denying his motion for a bill of particulars. We disagree.

who have never obtained an initial driver's license. The court instructed the jury on the element of operation on a public highway; it stated that § 14-36 (a) provides that "no person shall operate a motor vehicle on any public highway . . . ."

He further argues that the court's instructions could have misled the jury to believe that he had not obtained a license under § 14-36 (a) until he had demonstrated driving skills under § 14-36 (e) (3), when all that is required for a person whose license has been suspended to obtain a license is a payment of a fee under General Statutes § 14-50b (a). Although § 14-50b (a) imposes a fee for reinstatement of driver's licenses, § 14-36 (e) (3) imposes additional requirements when a suspension exceeds two years.

The following additional facts are relevant to our resolution of this claim. On August 16, 2007, the state filed a one count long form information charging the defendant with operation of a motor vehicle with a suspended license in violation of § 14-215 (a). On June 19, 2008, the state filed a one count substitute information, charging that "in the city of Danbury on or about the 6th day of February 2007 at approximately 8:26 p.m., [the defendant] did operate a motor vehicle without a license in violation of Connecticut General Statute § 14-36 (a)." On July 7, 2008, the defendant filed a motion for a bill of particulars in which he requested the state to clarify: "(1) what was the period of suspension alleged by the [s]tate and when did it expire; (2) what notice of suspension and of the expiration of such suspension was the [d]efendant issued, and when; (3) each of the essential elements of the offense charged." Following argument on the motion, the court concluded that the substitute information gave the defendant reasonable notice of the charge, including the specific statute with which he was charged and the date, time and place of the incident. The court determined that the information was sufficient to allow the defendant to prepare a defense and avoid surprise.

"A motion for a bill of particulars is addressed to the sound discretion of the trial court. . . . [A]n abuse of discretion in the denial of a motion for a bill of particulars can be premised only upon a clear and specific showing of prejudice to the defense. . . . The defendant has the burden of showing why the additional particulars were necessary to the preparation of his defense. . . . The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature and cause of the charges against him with sufficient precision to enable him to meet them at trial. . . . [That] the offense

should be described with sufficient definiteness and particularity to apprise the accused of the nature of the charge so he can prepare to meet it at his trial . . . are principles of constitutional law [that] are inveterate and sacrosanct. . . . Moreover, [t]he state has a duty to inform a defendant, within reasonable limits, of the time when the offense charged was alleged to have been committed." (Citations omitted; internal quotation marks omitted.) *State* v. *Vumback*, 263 Conn. 215, 221–22, 819 A.2d 250 (2003).

The defendant claims that the court's denial of his motion for a bill of particulars prejudiced his defense.[13] He argues that the substitute information alleged that he violated § 14-36 (a) by operating a motor vehicle "without a license" but does not specify the means by which he drove "without a license," namely, whether he never obtained a valid license, failed to renew a valid license, had a suspended license or failed to reinstate a suspended license. He contends that the substitute information did not give him notice of the essential facts that the state would have the burden of proving beyond a reasonable doubt.

The additional information requested by the defendant in his motion for a bill of particulars was not necessary to fulfill the purposes of the bill of particulars. Section 14-36 (a) provides that a person shall not operate a motor vehicle on a public highway or a private road with an established speed limit "until such person has obtained a motor vehicle operator's license." Thus, an element of § 14-36 (a) is driving without a license,

---

[13] The state argues that the defendant's claim is unreviewable because his motion for a bill of particulars was untimely. The court addressed the merits of the motion and stated that, although the motion was untimely, the issue of untimeliness would be relevant when considering prejudice. It appears from the transcript that the court exercised discretion under Practice Book § 41-5 to permit the defendant's late filing. Under the facts of this case, we will review the defendant's claim.

but how a defendant came to be without a license, though perhaps germane as background information, is not an element of § 14-36 (a) and is not essential as to time and place.

That notwithstanding, the defendant was aware of the requested information in any event. At the time of the hearing on the defendant's motion for a bill of particulars, both parties agreed that the defendant had access to the state's disclosure of department of motor vehicles documents. The documents included the defendant's suspension notices, which gave the beginning and end dates for his license suspensions, with the last end date being August 15, 2006. From this information, the defendant was able to determine the information he requested in his bill of particulars. "[T]his court has on numerous occasions adverted to sources extrinsic to the specific count or information to determine whether the defendant was sufficiently apprised of the offense charged. See, e.g., *State* v. *Frazier*, [194 Conn. 233, 237, 478 A.2d 1013 (1984)] (defendant sufficiently apprised where he had access to state's file, police reports and demonstrative evidence); *State* v. *Beaulieu*, 164 Conn. 620, 626, 325 A.2d 263 (1973) (information supplied by another count, state's attorney and court) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Madagoski*, 59 Conn. App. 394, 404, 757 A.2d 47 (2000), cert. denied, 255 Conn. 924, 767 A.2d 100 (2001); id., 402–404 (defendant not prejudiced by court's denial of motion for bill of particulars requesting state to specify manner in which crime committed; at time of hearing defendant had access to state's disclosure and thus was aware of acts on which state would proceed).

The defendant has not shown that he was prejudiced by the denial of his motion for a bill of particulars. "A defendant can gain nothing from [the claim that the pleadings are insufficient] without showing that he was

in fact prejudiced in his defense on the merits and that substantial injustice was done to him because of the language of the information. . . . To establish prejudice, the defendant must show that the information was necessary to his defense, and not merely that the preparation of his defense was made more burdensome or difficult by the failure to provide the information." (Citations omitted; internal quotation marks omitted.) *State* v. *Kyles*, 221 Conn. 643, 653–54, 607 A.2d 355 (1992). The defendant has not shown that the information requested was necessary to his defense. The substitute information put him on notice that he was charged with driving without a license on February 6, 2007, at approximately 8:26 p.m.—whether he was driving without a license because he had never obtained a valid license, had failed to renew a valid license, had a suspended license or had failed to reinstate a suspended license is not an element of § 14-36. He properly could be convicted under § 14-36 (a) if the state proved beyond a reasonable doubt that he was driving without a license, regardless of which way he came to be without a license. Accordingly, the defendant's argument that he was caught by surprise is unavailing.[14] For the foregoing reasons, we conclude that the court did not abuse its discretion in denying the defendant's motion for a bill of particulars.

---

[14] The defendant also claims prejudice because the state allegedly devoted "almost all" of its closing argument to the fact that he failed to renew an expired license and because he was unaware that the court would charge on the elements of reinstating a license under § 14-36 (e) (3). The contents of the state's closing arguments and of the jury charge are not relevant to whether the substitute information gave the defendant adequate notice. Nonetheless, the defendant's argument is unavailing. In closing, the state stressed that the defendant was charged with operating a motor vehicle without a license and that he should be found guilty because he drove when he did not have a license. The state mentioned that everything else in the case was "extraneous . . . ." The court's charge on § 14-36 (e) (3), while extraneous, was not prejudicial.

## V

The defendant last claims that the court erred in denying his motion for a judgment of acquittal[15] on the amended part B information. We disagree.

In an amended part B information filed July 1, 2008, the state alleged that the defendant had previously been convicted on January 30, 2001, of two counts of operating under a suspension in violation of § 14-215; and on January 29, 2003,[16] of one count of operating under a suspension in violation of § 14-215 and one count of operating without a license in violation of § 14-36 (a).[17] The defendant filed a motion for a judgment of acquittal on the amended part B information. In his motion, he argued that he did not qualify as a subsequent offender under § 14-36 (h) (2) because his prior convictions occurred more than three years prior to the offense in the part A information. The court stated that it would allow the state to introduce evidence on the part B information before it ruled on the motion. The state introduced evidence showing that on January 29, 2003, the defendant pleaded nolo contendere to operating under suspension in violation of § 14-215 (a) and operating without a license in violation of § 14-36, and that on January 30, 2001, he also pleaded nolo contendere to a part B information that charged him with two counts of operating under suspension in violation of § 14-215 (a).

Following argument, the court denied the defendant's motion. The court found that the state had established

---

[15] The defendant entitled his motion: "motion to dismiss/ motion for acquittal." We will treat it as a motion for a judgment of acquittal. See Practice Book §§ 42-40 and 42-42.

[16] The record reveals that the defendant's license was suspended as a result of the 2003 violations and that the license suspensions were removed and not reinstated. See footnote 1 of this opinion.

[17] The part B information also charged that the defendant had previously been convicted on June 6, 2001, with one count of operating under suspension in violation of § 14-215. The state later withdrew this count.

beyond a reasonable doubt that the defendant was convicted on January 30, 2001, of two counts of operating under a suspension in violation of § 14-215; on January 29, 2003, of one count of operating under a suspension in violation of § 14-215, and on January 29, 2003, of one count of operating without a license in violation of § 14-36 (a). The court then, pursuant to § 14-36 (h) (2), imposed a total effective sentence of ninety days incarceration on the part B information.

The issue in this claim raises a question of statutory construction, which is a "[question] of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) *State* v. *Marsh & McClennan Cos.*, supra, 286 Conn. 464.

The statutory language at issue in this claim is as follows. Section 14-36 (h) provides: "(1) Any person who violates any provision of this section shall, for a first offense, be deemed to have committed an infraction and be fined not less than seventy-five dollars or more than ninety dollars and, for any subsequent offense, shall be fined not less than two hundred fifty dollars or more than three hundred fifty dollars or be imprisoned not more than thirty days, or both. (2) In addition to the penalty prescribed under subdivision (1) of this subsection, any person who violates any provision of this section who (A) has, prior to the commission of the present violation, committed a violation of this section or subsection (a) of section 14-215, shall be fined not more than five hundred dollars or sentenced to perform not more than one hundred hours of community service, or (B) has, prior to the commission of the present violation, committed two or more violations of this section or subsection (a) of section

14-215, or any combination thereof, shall be sentenced to a term of imprisonment of ninety days which may not be suspended or reduced in any manner."

The defendant argues that he was not a "subsequent offender" under § 14-36 (h) (2) because his prior convictions had occurred more than three years before the present offense, and General Statutes (Rev. to 2007) § 14-1 (74) places a three year limitations period on subsequent convictions.[18] He contends that, because subsection (h) (1) of § 14-36 refers to "subsequent offense" and because the penalties under subsection (h) (2) are to be imposed "[i]n addition to" the penalties in subsection (h) (1), the penalties in subsection (h) (2) can only be applied in situations where the prior convictions are subsequent offenses as defined in § 14-1 (74).

We disagree with the defendant's interpretation of § 14-36 (h) (1), which imputes the additional term "subsequent offense" into subsection (h) (2). By its plain language, § 14-36 (h) (2) is not limited only to subsequent offenses. The legislature could have included the term "subsequent offense" in that subsection, as it did in subsection (h) (1), but did not do so. See *State* v. *Fernando A.*, supra, 294 Conn. 21 ("[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed" [internal quotation marks omitted]). Accordingly, the defendant's prior convictions that occurred more than three

---

[18] General Statutes (Rev. to 2007) § 14-1 (74) provides: " 'Second' violation or 'subsequent' violation means an offense committed not more than three years after the date of an arrest which resulted in a previous conviction for a violation of the same statutory provision, except in the case of a violation of section 14-215 or 14-224 or subsection (a) of section 14-227a, 'second' violation or 'subsequent' violation means an offense committed not more than ten years after the date of an arrest which resulted in a previous conviction for a violation of the same statutory provision . . . ."

years before the present offense could properly have been taken into account in the imposition of penalties under § 14-36 (h) (2). The court did not err in denying the defendant's motion for a judgment of acquittal.

The judgment is affirmed.

In this opinion the other judges concurred.