## STATE OF CONNECTICUT *v.* IRA ALSTON
## (AC 33244)

Beach, Bear and Espinosa, Js.*

---

\* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued January 3—officially released April 2, 2013

*David J. Reich*, assigned counsel, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, was *Matthew C. Gedansky*, state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. The defendant, Ira Alston, appeals from the judgment of conviction rendered following his guilty plea to the crime of possessing a weapon or dangerous instrument in a correctional institution in violation of

General Statutes § 53a-174a.[1] The defendant claims that the court (1) improperly accepted his plea because it was not made voluntarily and (2) lacked subject matter jurisdiction because the information failed to state all of the essential elements of the crime with which he stood charged. We affirm the judgment of the trial court.

By substitute information dated November 20, 2008, the state charged the defendant with possessing a weapon or dangerous instrument in a correctional institution. On October 1, 2009, the defendant's attorney, public defender Douglas Ovian, informed the court that the defendant wished to plead guilty in accordance with a plea bargain reached with the state. After the defendant entered a guilty plea, the prosecutor set forth the factual basis for the plea. The prosecutor stated that on June 30, 2008, while the defendant was an incarcerated prisoner at Northern Correctional Institution, he was found to possess an instrument consisting of a pen with a razor blade attached to it. The instrument was found on the defendant's person, concealed in his boxer shorts. Days prior to this discovery, the defendant and his cellmate were given razors for shaving purposes, but later told prison staff that they had disposed of the razors by flushing them down the toilet. Following a canvass of the defendant, the court found that the plea was knowingly, voluntarily and intelligently entered with the effective assistance of counsel, and accepted the plea. Thereafter, the court imposed the agreed upon sentence of one year incarceration, consecutive to the defendant's existing term of incarceration. This appeal followed.

---

[1] The state also charged the defendant in a part B information as a persistent serious felony offender. The state alleged that the defendant, at the time of trial, was serving a thirty-five year term of imprisonment related to his convictions, in 2002, of manslaughter in the first degree and carrying a pistol without a permit, as well as his conviction, in 2003, of larceny in the third degree. The defendant was not sentenced under that information and it is not germane to this appeal.

## I

First, the defendant claims that the court improperly accepted his plea because it was not made voluntarily. We disagree.

"[I]t is axiomatic that unless a plea of guilty is made knowingly and voluntarily, it has been obtained in violation of due process and is therefore voidable. . . . A plea of guilty is, in effect, a conviction, the equivalent of a guilty verdict by a jury. . . . In choosing to plead guilty, the defendant is waiving several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. . . . The . . . constitutional essentials for the acceptance of a plea of guilty are included in our rules and are reflected in Practice Book §§ [39-19 and 39-20]." (Internal quotation marks omitted.) *State* v. *Reid*, 277 Conn. 764, 780, 894 A.2d 963 (2006).

"Due process requires that every valid guilty plea be demonstrably voluntary, knowing and intelligent . . . . We . . . require the trial court affirmatively to clarify on the record that the defendant's guilty plea was made intelligently and voluntarily. . . . In order to make a knowing and voluntary choice, the defendant must possess an understanding of the law in relation to the facts, including all relevant information concerning the sentence. . . . The defendant must also be aware of the actual value of any commitments made to him by the court . . . because a realistic assessment of such promises is essential in making an intelligent decision to plead guilty. . . . A determination as to whether a plea has been knowingly and voluntarily entered entails an examination of all of the relevant circumstances. . . . [W]e conduct a plenary review of the circumstances surrounding [a] plea to determine if it was knowing and voluntary." (Internal quotation marks omitted.) *Caez* v. *Commissioner of Correction*, 107

Conn. App. 617, 619–20, 946 A.2d 279, cert. denied, 289 Conn. 903, 957 A.2d 868 (2008).

The defendant argues that his statements during the plea canvass reflect that his plea was coerced, rather than voluntary. The plea was coerced, he asserts, because it resulted from the denial of his right to the effective assistance of counsel. He states that "[the] plea was the result of force because it was based on his belief that his attorney failed to represent him." He argues that his statements at the time of his plea did not reflect that the plea was voluntary, the court did not make a record to demonstrate the voluntariness of the plea and that this court cannot presume that the plea was voluntary. The defendant did not raise the present issue before the trial court, either by moving to withdraw the plea or otherwise. He affirmatively seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The record is adequate for review and the claim implicates the defendant's right to due process and, thus, is reviewable under *Golding*. See, e.g., *State* v. *Gordon*, 69 Conn. App. 691, 694, 796 A.2d 1238 (2002).

The following additional facts are relevant to our analysis.[2] On October 1, 2010, before the court, *Hon.*

_____

[2] We note that, during the course of the proceedings, the defendant had a history of expressing dissatisfaction with his attorney, Ovian. At his first court appearance related to the present charge on October 15, 2008, the defendant indicated to the court that he wished to proceed as a self-represented party. The court canvassed the defendant and permitted him to exercise his right of self-representation. On November 4, 2008, the court granted the defendant's request to appoint Ovian as standby counsel. At another court appearance on December 16, 2008, the court granted the defendant's request to appoint Ovian to represent him fully in this matter. At a court appearance on July 10, 2009, the defendant informed the court that he did not want Ovian to represent him and that he wanted a ninety day continuance for the purpose of hiring an attorney to represent him. After Ovian addressed the court, stating that he had interacted well with the defendant, the court denied the defendant's request.

Thereafter, on August 5, 2009, the defendant personally filed a "motion for replacement of court appointed counsel." Among other things, he repre-

*Terence A. Sullivan,* judge trial referee, the defendant withdrew his prior pleas and elections, and pleaded guilty to the crime of possessing a weapon or dangerous instrument in a correctional institution. The prosecutor set forth the factual basis for the plea and indicated that the plea agreement was for one year to serve, consecutive to any sentence imposed previously.

The court proceeded to canvass the defendant concerning his plea. The court asked the defendant if he had discussed with Ovian the decision to change his plea. The defendant replied affirmatively. The court asked the defendant if Ovian had explained the essential elements of the crime to him. The defendant replied that he did not understand the elements of the crime. After a colloquy between the court, Ovian and the defendant, the defendant stated: "I don't understand it . . . what I do understand is regardless of . . . the representation that I've been given by Douglas Ovian, that

sented that Ovian had acted contrary to his legal interests, conspired with the state's attorney and failed to pursue matters related to his case. On September 4, 2009, at a hearing on the motion, the defendant withdrew the motion.

At a hearing on October 1, 2010, at which time jury selection was scheduled to commence, the defendant addressed the court, *Mullarkey, J.,* indicating that he did not believe that Ovian was acting in his best interest and that he would like Ovian "to withdraw" from representing him. The defendant stated that Ovian had not pursued certain motions that he believed were worthwhile and that, contrary to Ovian, he was not interested in negotiating a plea bargain with the state. Also, the defendant stated that Ovian failed to challenge the sufficiency of the arrest warrant in this case. The court denied the defendant's request to remove Ovian as his attorney.

Thereafter, the defendant invoked his right of self-representation. Once again, the defendant stated that Ovian was not acting in his best interest in that, among other things, he failed to challenge the sufficiency of the arrest warrant, did not file a motion for a bill of particulars, did not provide documents to him, did not perform sufficient legal research and did not communicate with him concerning the case. The court discussed with the defendant the disadvantages of self-representation and afforded the defendant a recess to consider his request. When court was back in session, Ovian stated that the defendant intended to enter a guilty plea. At that point, Judge Mullarkey called a brief recess, and the matter continued before Judge Sullivan.

it really doesn't matter. So, weighing those options, [if] I go to trial with his representation, there's no way I'm going to be successful whether I'm guilty or not guilty. So, I'm just going to take the one year instead of going to trial with him and getting [up to a twenty-five year term of incarceration]."

The court then asked if the defendant intended to make an *Alford* plea,[3] at which time Ovian stated that he was unsure. The following colloquy occurred:

"[The Defendant]: I don't even understand [the] *Alford* plea. This is new to me. I didn't get [any] notice. I didn't even know I had court today. I was pulled in, and he's telling me all of this, that we're starting a jury trial. He didn't even discuss trial strategy with me. So, in light of all of that, I know I'm unprepared for a trial. With his representation, there ain't no way I will be successful at a trial. It just came up today. Now, *Alford* came up today. All of this is new today. And I don't understand—I never seen the *Alford* case. I don't know what *Alford* requires, so in light of one year to what he says, twenty-five years, and the representation that I'm given, I'm stuck between a hard spot and a rock.

"The Court: So, tell me what you want to do?

"[The Defendant]: In light of everything I just said, I don't have the necessary means to employ private counsel. I'm not saying that I'm guilty."

Additional discussion between the court and the defendant occurred. Once more, the court discussed with the defendant the elements of the crime. The defendant questioned whether the state had to prove that he *used* a dangerous instrument. The court informed the defendant that this was not the case. The defendant represented that he understood that, by pleading guilty,

---

[3] See *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

he was forgoing his right to a trial, his right to remain silent, his right to confront adverse witnesses and present evidence on his behalf and his right to require the state to prove his guilt beyond a reasonable doubt. The defendant stated that he understood the state's burden of proof with regard to the crime with which he stood charged. The following colloquy then occurred:

"The Court: Okay. Now, I hate to even ask this because it's—you're not thinking the way that I'm thinking—but I have to ask you, is anyone threatening or forcing you to enter this plea today?

"[The Defendant]: Forced by?

"The Court: By anybody? Is anybody threatening you that . . . you have to plead guilty today?

"[The Defendant]: Not in the sense that you're presenting it. It means, like, physical harm?

"The Court: I'm talking about any kind of coercion, threats—

"[The Defendant]: I feel pressured, yes.

"The Court: If you don't plead guilty, we're going to do something to your family. If you don't do something, we're going to take you out and beat you up—that type of thing.

"[The Defendant]: Not in that context, no."

The court questioned the defendant about the plea agreement with the state, the sentence to which he was exposed if he did not plead guilty and other consequences of his plea. The defendant stated that he understood these facts and consequences. The following colloquy ensued:

"[The Court]: You've indicated to me that you understand what the plea agreement is, and I'm going to ask you once more, are you sure that this is what you want

to do today, because it has to be decided now. I need to know whether or not you—I'm asking you for a final time, is this what you've decided to do, not that you like it, but this is what you've decided to do and it's your decision. It's your decision right now, but if I find you guilty, then the decision is gone.

"[The Defendant]: In light of the circumstances, yes, I did decide.

"The Court: Okay. And this is what you want to do today?

"[The Defendant]: In light of the circumstances, yes."

The court found that the plea was entered knowingly, voluntarily and intelligently, with the effective assistance of counsel. The court found that there was a factual basis for the plea. The court accepted the plea and found the defendant guilty of possessing a weapon or a dangerous instrument in a correctional institution. The court asked the defendant if he wished to have a presentence investigation, to which the defendant replied, "I accept the plea offer."

The court invited the defendant to address the court prior to imposing sentence. The defendant questioned whether he had the right to appeal, and then stated: "What I'm going to say is that the only reason why I'm taking the plea is because I feel under these circumstances there has been nothing done on my behalf that would even give me the remotest possibility of being successful at a jury trial. Weighing that against the state's resources, I have no other choice but to accept one year or go to trial under the circumstances and possibly to be exposed to twenty-five years." The court replied: "I think you can appeal. I think anybody can appeal." Thereafter, the court imposed his sentence.

We carefully have reviewed the court's canvass of the defendant. The transcript of the proceeding reflects,

and the defendant does not challenge, that the court's canvass complied with the requirements of Practice Book §§ 39-19 and 39-20. The narrow issue is whether the defendant's statements reflected that the plea was not voluntary. We reject the defendant's argument that his statements reflected coercion. The defendant expressed his belief that, with Ovian's representation, his chances for success at trial were low. Before this court, the defendant alleges that "he indicated that he was pressured [into entering a guilty plea] in the sense that if he did not enter a plea, he would have to proceed to trial with an attorney with whom he had a conflict and whom he did not believe would properly represent him."

The defendant's argument fails, however, because the defendant's statements reflect that he personally considered the options available to him on October 1, 2010, and decided that entering a guilty plea was the best option available to him. The decision of whether to plead guilty or proceed to trial is a customary part of the criminal process. The defendant unambiguously explained that his decision was based on his own careful assessment of the options available to him as well as his chances for success at trial. In this sense, the plea was demonstrably voluntary. Nothing in the defendant's statements suggests that he lacked the freedom to choose between pleading guilty or proceeding to trial.

The defendant's expression of his subjective beliefs that Ovian's representation was deficient and that he would not prevail at trial with Ovian's assistance was not evidence that the defendant's decision to plead guilty was not voluntary but merely provided a rational explanation for the defendant's plea.[4] "Because every

---

[4] For clarity, we observe that the narrow issue before us, relating to the voluntariness of the defendant's plea, does not require that we assess Ovian's representation in this matter.

valid guilty plea must be demonstrably voluntary, knowing and intelligent, we require the record to disclose an act that represents a knowing choice among available alternative courses of action, an understanding of the law in relation to the facts, and sufficient awareness of the relevant circumstances and likely consequences of the plea." *State* v. *Watson*, 198 Conn. 598, 604, 504 A.2d 497 (1986).

For the foregoing reasons, we conclude that the defendant's statements during his canvass reflect that his plea was entered voluntarily. Accordingly, we conclude that the defendant cannot prevail under *Golding* because he has not demonstrated that a constitutional violation clearly exists and clearly deprived him of a fair trial. See *State* v. *Golding*, supra, 213 Conn. 240.

II

Next, the defendant claims that the court lacked subject matter jurisdiction because the information failed to state all of the essential elements of the crime with which he stood charged. We disagree.

By way of a short form information, the state charged the defendant with "POSS OF WEAPON/DANGEROUS INST IN CORRECTIONAL FAC . . . AT Somers ON OR ABOUT . . . 6/30/2008 IN VIOLATION OF GENERAL STATUTE NO. 53A-174A." The substitute information, dated November 20, 2008, provides in relevant part: "Matthew C. Gedansky, State's Attorney for the Judicial District of Tolland accuses IRA ALSTON of POSSESSION OF WEAPON OR DANGEROUS INSTRUMENT IN A CORRECTIONAL INSTITUTION, and charges that in the area of Northern Correctional Institution, 287 Bilton Road, in the town of Somers on or about the 30th day of June, 2008, at approximately 6:00 p.m., the said Ira Alston, being an inmate of such institution, knowingly made, conveyed from place to place, or had in his possession or under his control any firearm,

weapon, dangerous instrument, explosive or any other substance or thing designed to kill, injure or disable, in violation of Connecticut General Statutes § 53a-174a."

Section 53a-174a (a) provides: "A person is guilty of possession of a weapon or dangerous instrument in a correctional institution when, being an inmate of such institution, he knowingly makes, conveys from place to place or has in his possession or under his control any firearm, weapon, dangerous instrument, explosive, or any other substance or thing designed to kill, injure or disable."

The defendant argues that the information did not allege that he committed a crime because it failed to allege the manner in which he used the object found in his possession. The defendant argues that both the statutory definition of "dangerous instrument"[5] and the dictionary definition of "weapon"[6] require a certain type of use with regard to the object that is the subject of the offense. Here, the defendant argues, there was no allegation that he used or intended to use the object in any manner. Citing *United States* v. *Foley*, 73 F.3d 484,

---

[5] General Statutes § 53a-3 (7) defines "dangerous instrument," as that term is used in § 53a-174a, as "any instrument, article or substance which, under the circumstances in which it is used or attempted or threatened to be used, is capable of causing death or serious physical injury . . . ."

[6] The defendant draws our attention to the definition of weapon appearing at http://www.merriam-webster.com/dictionary/weapon (last visited March 19, 2013), which provides in relevant part: "1. : something (as a club, knife, or gun) used to injure, defeat, or destroy 2. : a means of contending against another."

"In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly." General Statutes § 1-1 (a). "If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *Wilton Meadows Ltd. Partnership* v. *Coratolo*, 299 Conn. 819, 826, 14 A.3d 982 (2011).

487–88 (2d Cir. 1996), the defendant argues that the failure of the information to charge an offense deprived the trial court of subject matter jurisdiction. The defendant's claim is limited to the jurisdictional issue; he does not argue that the alleged defect in the information caused unfair surprise or any other type of prejudice to the defense.[7] The claim that the information failed to charge an offense is reviewable at any time during the pendency of the proceedings. See Practice Book §§ 41-4 and 41-5.

"When reviewing a claim, not raised prior to the verdict, that an information fails to charge all the essential elements of an offense, we must construe the information liberally in favor of the state. . . . Under the applicable standard of review, a conviction based upon a challenged information is valid unless the information is so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had." (Citations omitted; internal quotation marks omitted.) *State* v. *McMurray*, 217 Conn. 243, 250, 585 A.2d 677 (1991).

"When the state's pleadings have informed the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and were definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, they have performed their constitutional duty. . . . We have held that [u]nder our practice, it is sufficient for the state to set out in the information the statutory name of the crime with which the defendant is charged, leaving to the defendant the burden of requesting a bill of particulars

---

[7] The record does not reflect that the defendant requested a bill of particulars. As stated previously, prior to the defendant's canvass, the prosecutor set forth in detail the factual basis for the plea. At no point did the defendant state that he did not understand this factual basis.

more precisely defining the manner in which the defendant committed the offense." (Citation omitted; internal quotation marks omitted.) *State* v. *Vincent*, 194 Conn. 198, 205, 479 A.2d 237 (1984).

Here, the short form information set forth, among other information, the name of the offense, the exact section and subsection of the statute under which the defendant was charged, the date on or about which the crime was committed as well as the location in which the crime was committed. The long form substitute information set forth this same information about the crime with which the defendant was charged as well as a specific description of the elements of the offense.

Previously, we set forth the language of § 53a-174a (a). To sustain a conviction under § 53a-174a, the state bears the burden of proving beyond a reasonable doubt three essential elements, namely, that (1) while the accused was an inmate of a correctional institution (2) he made, conveyed from place to place, possessed or had under his control (3) any firearm, weapon, dangerous instrument, explosive, or any other substance or thing designed to kill, injure or disable. The substitute information articulated each of these three essential elements, alleging that the defendant was an inmate at "Northern Correctional Institution" at 6 p.m. on June 30, 2008, at which time he "knowingly made, conveyed from place to place, or had in his possession or under his control" one of the things listed in the statute, specifically, "any firearm, weapon, dangerous instrument, explosive or any other substance or thing designed to kill, injure or disable . . . ."

This court has held that an information that states the exact section and subsection of the statute under which a defendant is charged, as well as the time and place of the alleged unlawful event, is sufficient to charge a defendant with such offense. See, e.g., *State*

v. *Vlahos*, 138 Conn. App. 379, 385, 51 A.3d 1173 (2012); *State* v. *Reed*, 55 Conn. App. 170, 176–77, 740 A.2d 383, cert. denied, 251 Conn. 921, 742 A.2d 361 (1999). Here, the charging instrument at issue surpassed such minimum requirements, articulating each of the essential elements set forth in the statute. The defendant argues that the information failed to state an offense because it was not articulated in accordance with the definition of certain words and phrases that appear in the statutory provision under which he was charged. There is no support in the law for the defendant's argument that this more detailed type of information was required or that the state's practice in the present case was constitutionally deficient. Accordingly, we reject the defendant's jurisdictional challenge.

The judgment is affirmed.

In this opinion the other judges concurred.