******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RICHARD REYNOLDS *v.* COMMISSIONER
OF CORRECTION
(SC 19071)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued April 29, 2015—officially released June 28, 2016*

*John Holdridge*, with whom was *Paula Mangini Montonye*, for the appellant (petitioner).

*Harry Weller*, senior assistant state's attorney, with whom were *Cynthia S. Serafini*, senior assistant state's attorney, and, on the brief, *Maureen Platt*, state's attorney, and *Brenda L. Hans* and *Elizabeth Tanaka*, assistant state's attorneys, for the appellee (respondent).

*Opinion*

EVELEIGH, J. The petitioner, Richard Reynolds, appeals from the denial of his petition for a writ of habeas corpus challenging his sentence of death under General Statutes (Rev. to 1991) § 53a-46a and his underlying conviction for a capital felony under General Statutes (Rev. to 1991) § 53a-54b (1).[1] The petitioner was convicted by a three judge panel and sentenced to death by a jury for the murder of a municipal police officer, Walter Williams, Jr., in the early morning hours of December 18, 1992. On direct appeal, this court affirmed the petitioner's conviction and sentence. *State* v. *Reynolds*, 264 Conn. 1, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). The facts relating to the petitioner's crime, his conviction, and his sentence are set forth in greater detail in our decision in his direct appeal. Id., 18–24. After we issued our decision in the petitioner's direct appeal, the petitioner filed a petition for a writ of habeas corpus claiming, among other things, his criminal trial and appellate counsel rendered constitutionally ineffective assistance by failing to raise or sufficiently present a plethora of claims during the criminal proceedings. After an evidentiary hearing, the habeas court rejected each of the petitioner's claims and rendered judgment denying the petition. The habeas court granted certification to appeal from its judgment pursuant to General Statutes § 52-470 (g) and the petitioner appealed to the Appellate Court. The petitioner later filed a motion to transfer the appeal to this court, which we granted. See General Statutes § 51-199 (c); Practice Book § 65-2.

On appeal, the petitioner raises thirteen separate issues with the habeas court's decision. Most of the issues concern his death sentence, but a few relate to his capital felony conviction.[2] We note at the outset that, in light of our decisions in *State* v. *Santiago*, 318 Conn. 1, 112 A.3d 1 (2015), and *State* v. *Peeler*, 321 Conn. 375,    A.3d    (2016), the petitioner's death sentence can no longer stand. Accordingly, we reverse the judgment of the habeas court with respect to the petitioner's sentence. Three claims remain regarding the underlying capital felony conviction: (1) that the criminal trial court lacked subject matter jurisdiction to hear the charges; (2) that his criminal trial counsel rendered constitutionally ineffective assistance during the guilt phase of the petitioner's trial; and (3) that international law precludes his conviction for a capital felony. We reject each of these claims and affirm the judgment of the habeas court with respect to the petitioner's underlying conviction.

I

The petitioner first claims that the substitute long form information charging him with a capital felony failed to describe each and every element of the offense

charged, thus depriving the trial court of subject matter jurisdiction. The state initially charged the petitioner with a short form information alleging that he committed the offense of capital felony in the city of Waterbury on or about December 18, 1992, in violation of General Statutes (Rev. to 1991) § 53a-54b (1). The petitioner later filed a motion for a bill of particulars asking for more information about the nature of the charge. The state filed a substitute long form information in response. The long form information alleged that the petitioner "did commit the crime of [capital felony] in violation of Connecticut General Statutes [Rev. to 1991] § 53a-54b (1) in that on or about [December 18, 1992], at approximately [4 a.m.], at or near the intersection of Orange and Ward Streets [in] Waterbury . . . the [petitioner] did commit [murder] of a member of a local police department, to wit: [Officer Williams] of the Waterbury . . . Police Department." The parties agree that the long form information did not allege that Officer Williams was acting within the scope of his duties at the time of the offense, one of the elements of a capital felony under (Rev. to 1991) § 53a-54b (1).

According to the petitioner, the state's failure to allege every element of the capital felony offense deprived the trial court of subject matter jurisdiction over that charge, thus rendering his conviction and resulting sentence invalid. In response, the respondent, the Commissioner of Correction, asserts that the petitioner did not preserve this issue for our review because he failed to raise this claim before the habeas court, preventing him from raising it for the first time in this appeal. The respondent also argues that the petitioner's claim, even if raised, cannot overcome the procedural hurdles required to mount a collateral attack on the subject matter jurisdiction of the original trial court.[3] We do not address the respondent's arguments about whether the petitioner is procedurally barred from presenting this collateral attack because, assuming for the sake of argument that we could properly review his claim, which presents a question of law; *Stepney Pond Estates, Ltd.* v. *Monroe*, 260 Conn. 406, 417, 797 A.2d 494 (2002); its merits are so obviously lacking that we have no trouble rejecting it out of hand.

An information need not allege every element of an offense to invoke the Superior Court's criminal jurisdiction—it need only allege the statutory citation or name of the offense, along with the date and place the alleged offense occurred.[4] See, e.g., *State* v. *Commins*, 276 Conn. 503, 513–14, 886 A.2d 824 (2005) (rejecting subject matter jurisdiction challenge when information failed to allege element of offense because it was "sufficient for the state to set out in the information the statutory name of the crime with which the defendant is charged" [internal quotation marks omitted]), overruled on other grounds by *State* v. *Elson*, 311 Conn. 726, 754, 91 A.3d 862 (2014); *State* v. *Crosswell*, 223 Conn. 243,

265, 612 A.2d 1174 (1992) ("[i]t is settled law that the original information, because it set forth by name and statutory reference the crime with which the defendant was charged, was sufficient to invoke the jurisdiction of the court"); *State* v. *Alston*, 141 Conn. App. 719, 732, 62 A.3d 586 ("an information that states the exact section and subsection of the statute under which a defendant is charged, as well as the time and place of the alleged unlawful event, is sufficient to charge a defendant with such offense"), cert. denied, 308 Conn. 943, 66 A.3d 884 (2013); *State* v. *Reed*, 55 Conn. App. 170, 176–77, 740 A.2d 383 ("The long form information . . . provided the defendant with the exact section and subsection of the statute under which he was charged. . . . Because the information was adequate, we conclude that the trial court had jurisdiction over this matter."), cert. denied, 251 Conn. 921, 742 A.2d 361 (1999); *State* v. *Walton*, 34 Conn. App. 223, 227, 641 A.2d 391 ("The original short form information set forth the crimes with which the defendant was charged by name and statutory references. The information was sufficient, therefore, to invoke the jurisdiction of the court."), cert. denied, 230 Conn. 902, 644 A.2d 916 (1994); see also *State* v. *Vlahos*, 138 Conn. App. 379, 385, 51 A.3d 1173 (2012) (information sufficiently charged offense when it "provide[d] the defendant with the statutory section under which he was charged as well as the time and place of the incident"), cert. denied, 308 Conn. 913, 61 A.3d 1101 (2013); *State* v. *Akande*, 111 Conn. App. 596, 603, 960 A.2d 1045 (2008) (same), aff'd, 299 Conn. 551, 11 A.3d 140 (2011).

Once the state files an information with the required allegations, the Superior Court's criminal jurisdiction is invoked and any claim the information lacks enough factual detail to allow the defendant to prepare a defense goes to the sufficiency of the notice given to the defendant. See, e.g., *State* v. *Alston*, supra, 141 Conn. App. 730–31. The petitioner has not claimed in the present case that a lack of factual detail in the informations prevented him from preparing a defense;[5] he claims only that the trial court lacked jurisdiction.

It follows from our case law that the trial court in the present case had jurisdiction to hear the capital felony charge against the petitioner. The state filed a short form information charging the petitioner with a capital felony and included the statutory citation for the alleged offense and the date and place the offense allegedly occurred. Nothing more was required to invoke the trial court's jurisdiction. The fact that the substitute long form information contained additional factual allegations relating to some, but not all, of the elements of the crime had no impact on the trial court's jurisdiction. *State* v. *Crosswell*, supra, 223 Conn. 264–66; *State* v. *Walton*, supra, 34 Conn. App. 227–28. The petitioner further contends that, under the common law, failure to allege every element of a crime rendered an

information defective, citing to this court's decisions in *State* v. *Tyrrell*, 100 Conn. 101, 122 A. 924 (1923), *State* v. *Keena*, 63 Conn. 329, 28 A. 522 (1893), and *State* v. *Costello*, 62 Conn. 128, 25 A. 477 (1892). These cases do not, however, discuss whether the alleged defects in the information rendered the trial court without subject matter jurisdiction to hear the charges. More importantly, whatever this court may have held in those cases about the sufficiency of an information under the common law, that view is clearly not in accord with our modern jurisprudence. See, e.g., *State* v. *Commins*, supra, 276 Conn. 513–14; *State* v. *Crosswell*, supra, 264–66. We therefore conclude that the petitioner's jurisdictional claim is meritless.[6]

## II

The petitioner also claims that his criminal trial counsel did not provide constitutionally adequate representation during the guilt phase of his criminal trial because his counsel failed to effectively use the state's preferential treatment of Anthony Crawford, who was with the petitioner when Officer Williams was murdered, to support the petitioner's defense. Specifically, the petitioner asserts that his trial counsel should have brought a claim of misconduct against the state because the petitioner believes the state improperly granted leniency to Crawford to induce Crawford to testify against the petitioner. The petitioner also argues that his trial counsel did not adequately use the state's favorable treatment of Crawford to challenge Crawford's credibility at the petitioner's trial.[7]

According to the petitioner, the state could have charged Crawford with more severe offenses, including murder and attempted sale of cocaine. Evidence given at the petitioner's trial shows that shortly before Officer Williams was murdered, the petitioner and Crawford were walking down a street in Waterbury, each carrying about 175 bags of cocaine worth approximately $3500. *State* v. *Reynolds*, supra, 264 Conn. 18–19. Officer Williams, who was on patrol in the area, spotted the petitioner and Crawford and ordered them to stop. Id., 19. Crawford continued walking, but the petitioner stopped for the officer. Id. Officer Williams began to pat down the petitioner, an altercation ensued, and the petitioner ultimately shot and killed Officer Williams. Id., 19–21. Both the petitioner and Crawford ran from the scene, but were later apprehended. Id., 20–21.

The state charged the petitioner with the murder of Officer Williams and charged Crawford with hindering prosecution based on Crawford's "silence" about the petitioner's involvement in the shooting when police canvassed the neighborhood shortly after the murder. Neither of them were charged with any drug crimes.[8] Crawford was acquitted of the hindering prosecution charge after a bench trial on the basis that his "silence" was, as a matter of law, not an act of concealment

under the hindering prosecution statute. Crawford later testified against the petitioner. The petitioner claimed that Crawford had shot Officer Williams, but Crawford named the petitioner as the shooter in his trial testimony. The three judge panel ultimately found that the petitioner shot Officer Williams. Crawford testified that the state had neither made a deal with him nor given any promises in exchange for his testimony.

The petitioner contends that the state could have charged Crawford as an accomplice in Officer Williams' murder and for the attempted sale of cocaine, but that the state did not do so because it had an undisclosed deal with Crawford to forgo more serious charges in return for Crawford's testimony against the petitioner. The petitioner further claims that the state, as part of its undisclosed "ruse" to secure Crawford's testimony, intentionally bungled its case against Crawford to all but ensure that he would be acquitted on the hindering prosecution charge. The petitioner argues that trial counsel was deficient for failing to argue that the state's charging decisions amounted to misconduct because they "corrupt[ed] the truth seeking function" of the trial. He also argues that trial counsel should have argued the existence of a secret deal between the state and Crawford as a means to attack Crawford's credibility.

The respondent asserts that there was no misconduct for the petitioner's trial counsel to raise, because the state enjoys broad discretion to charge defendants, and was under no obligation to bring more severe charges against Crawford. The respondent also asserts that the petitioner has provided no evidence that a deal existed between the state and Crawford, and notes that both the trial prosecutor and Crawford denied that any deal existed. Consequently, the respondent argues that the petitioner's trial counsel cannot be faulted for failing to make an issue of any purported deal with Crawford. We agree with the respondent and reject the petitioner's claims.

Before turning to the petitioner's claims, we observe that the petitioner's burden and our standard of review are explained in detail in *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712–13, 946 A.2d 1203 (2008). We briefly note that to succeed on a claim of ineffective assistance of counsel, the petitioner must prove both that his trial counsel's performance was constitutionally deficient and that his defense suffered prejudice as a result. Id.

As for the misconduct argument, the petitioner has not shown that his counsel's performance was deficient because he has not shown that any misconduct occurred. Both the decision to criminally charge an individual and the choice of which crime should be charged lie within the discretion of the state and are not ordinarily subject to judicial review. See, e.g., *State* v. *Kinchen*, 243 Conn. 690, 699–700, 707 A.2d 1255

(1998) (explaining in detail reasons for this deference). To be sure, this discretion is not unlimited. See, e.g., *State* v. *Webb*, 238 Conn. 389, 518 n.81, 680 A.2d 147 (1996) (state cannot charge out of vindictiveness nor on impermissible basis such as race, religion or sex); see also *State* v. *Corchado*, 200 Conn. 453, 460, 512 A.2d 183 (1986) (statute permits court to dismiss charges with prejudice if circumstances are compelling). The petitioner has not, however, directed us to any authority, and we are aware of none, that the state commits misconduct if it chooses not to bring the most severe charges possible against a cooperating witness. To the contrary, prosecutors frequently show leniency toward witnesses who cooperate in a prosecution, a practice that has been upheld by courts time and again. See, e.g., *United States* v. *Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987) (noting that "[n]o practice is more ingrained in our criminal justice system" than prosecutors giving leniency to testifying witnesses). Furthermore, barring the state from this practice could severely hinder the state's ability to gather evidence from coparticipants, who frequently hold the best evidence available about the crimes charged. See *United States* v. *Dailey*, 759 F.2d 192, 196 (1st Cir. 1985) (noting that coparticipants are frequently present at crime scenes and can be most knowledgeable witnesses available). Without demonstrating any legal basis for a claim of misconduct, the petitioner has not established that his counsel were deficient by failing to raise it.

But even if the petitioner could show some form of misconduct, the petitioner's claim fails nevertheless because he has provided no argument whatsoever in his briefs about how this alleged deficiency prejudiced him. The petitioner has not provided us any authority to show what remedy the trial court could have provided the petitioner had his counsel raised a charge of misconduct. The petitioner does not suggest—and we are aware of no authority holding—that the state's leniency toward Crawford somehow precluded the state from charging the petitioner with more severe crimes than Crawford or required his acquittal. Nor has the petitioner suggested that leniency by the state rendered Crawford an incompetent witness.[9] Having failed to provide any argument or authority to support a finding of prejudice, the petitioner cannot succeed on his claim based on this alleged misconduct. See *Small* v. *Commissioner of Correction*, supra, 286 Conn. 713 (failure to prove prejudice defeats claim for ineffective assistance of counsel).

As for the petitioner's argument that his trial counsel failed to adequately attack Crawford's credibility at trial, we conclude his counsel's actions were reasonable and, thus, not deficient. According to the petitioner, his counsel should have done more to challenge Crawford's credibility by arguing the existence of a clandestine deal. The petitioner faults his trial counsel for not rely-

ing on Crawford's acquittal on what the petitioner calls a "bogus" hindering prosecution charge and the state's failure to charge Crawford with homicide or drug charges to argue that the state had "obviously cut a deal" with Crawford in exchange for his testimony.

It is hardly unreasonable for counsel to choose to preserve credibility with the finder of fact by declining to pursue an argument that is supported by nothing more than conjecture. The petitioner has not cited any evidence that a deal existed other than mere speculation based on the state's lenient treatment of Crawford. One of the petitioner's trial attorneys testified that he had no evidence of any deal and Crawford denied that the state had made any promises in exchange for his testimony.

The petitioner's trial counsel also reasonably could have chosen not to imply the existence of a deal to avoid raising an unsupported implication that the state had acted improperly. Had there been a deal, the state would have been obligated to disclose it. *State* v. *Floyd*, 253 Conn. 700, 736, 756 A.2d 799 (2000). Had the state neglected to disclose the deal initially, it would have been obligated to correct the record when Crawford testified that no deal existed. *Adams* v. *Commissioner of Correction*, 309 Conn. 359, 368–69, 71 A.3d 512 (2013). Thus, to imply that a secret deal was struck is to imply that the state violated its obligations.

Rather than make such accusations without any supporting evidence, the petitioner's trial counsel opted for the eminently reasonable alternative of questioning Crawford about an unrelated charge pending against him as a means to suggest that Crawford was lying or embellishing his testimony because he hoped, even in the absence of a deal, that the state might be more lenient in his other case.[10] Although the petitioner claims that his counsel should have exposed to the three judge panel that Crawford was acquitted of hindering prosecution because the charge was "bogus," his counsel reasonably could have chosen to avoid revealing Crawford's acquittal, lest it make Crawford appear less culpable for Officer Williams' death in the eyes of the fact finder. We therefore conclude that his trial counsel's performance was not deficient and we do not consider whether any purported deficiency prejudiced the petitioner, an element of his claim that, as we have previously noted, the petitioner did not brief in this court.[11]

III

Lastly, the petitioner asserts that the habeas court improperly concluded that international law did not bar his conviction for a capital felony. We decline to address this argument, however, because the petitioner did not adequately brief it. Although the petitioner makes a passing statement that his conviction violates interna-

tional law, the petitioner's claim appears aimed at his sentence, which is governed by our decisions in *State* v. *Santiago*, supra, 318 Conn. 1, and *State* v. *Peeler*, supra, 321 Conn. 375. The petitioner spends all of his argument explaining that international law prohibits a sentence of death, but cites no authority and provides no argument that international law also prevents a capital felony conviction, which does not necessarily carry a sentence of death. See General Statutes (Rev. to 1991) § 53a-46a. Consequently, we deem the petitioner's claim waived insofar as it challenges his capital felony conviction. *Electrical Contractors*, *Inc.* v. *Dept. of Education*, 303 Conn. 402, 444 n.40, 35 A.3d 188 (2012) ("[c]laims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion").

The judgment of the habeas court is reversed only with respect to the petitioner's claim regarding the sentence of death and the case is remanded to that court with direction to render judgment granting the petition for a writ of habeas corpus as to that claim, vacating the petitioner's sentence of death, and ordering the trial court to impose a sentence of life imprisonment without the possibility of release; the judgment is affirmed in all other respects.

In this opinion ROGERS, C. J., and PALMER, McDONALD and ROBINSON, Js., concurred.

[1] The petitioner was also convicted of murder in violation of General Statutes (Rev. to 1991) § 53a-54a, but that conviction was merged into the capital felony count.

[2] After the habeas trial, but before the petitioner completed briefing this appeal, the legislature passed No. 12-5 of the 2012 Public Acts (P.A. 12-5), which abolished the death penalty for crimes occurring after its effective date. After its passage, the petitioner asked permission to address for the first time on appeal issues concerning the impact of P.A. 12-5 on his death sentence. We denied the request without prejudice to the petitioner's right to refile after the release of a decision in *State* v. *Santiago*, 318 Conn. 1, 122 A.3d 1 (2015), which raised identical claims. This court has released its decision in *Santiago*, which concluded that imposing or carrying out a sentence of death violates article first, §§ 8 and 9, of the Connecticut constitution. Id., 15–17.

[3] Relying on a decision in a civil case, *In re Shamika F.*, 256 Conn. 383, 407–408, 773 A.2d 347 (2001), the respondent argues that the petitioner cannot collaterally attack the trial court's jurisdiction unless he first shows that the jurisdictional defect was entirely obvious, that he was prevented from raising the claim during the original proceeding, or that justice requires permitting him to litigate the issue for the first time in the collateral proceeding. Because we do not address the respondent's procedural objections, we take no position on the application of these hurdles to a collateral attack on the original trial court's subject matter jurisdiction over a criminal proceeding.

[4] This rule is now so well entrenched in our jurisprudence that it is reflected in the requirements for an information set forth in our rules of practice. See Practice Book § 36-13.

[5] It is unlikely that the petitioner would have succeeded on such a claim. Even though the informations did not specifically allege that Officer Williams was acting within the scope of his duties at the time of the offense, the petitioner contested this very element at his trial. The state specifically alerted the trial court and the petitioner that the operative information did not include factual allegations for this element and acknowledged that it had the burden of proving that fact beyond a reasonable doubt. See *State* v. *Reynolds*, supra, 264 Conn. 28 n.18. The petitioner subsequently moved for a judgment of acquittal on the ground that the state failed to prove that element, which the trial court denied. Id. The three judge panel hearing the

case ultimately found that the state had proven this element beyond a reasonable doubt. It thus appears that the petitioner was fully on notice that the state would try to prove this element at trial and that he prepared his defense accordingly.

[6] The petitioner has also claimed, for the first time on appeal, that his trial and appellate counsel's failure to raise this subject matter jurisdiction claim during the criminal trial and direct appeal proceedings amounted to ineffective assistance of counsel. Because the petitioner's stand-alone jurisdiction claim is meritless, his related ineffective assistance claim must also fail.

[7] The petitioner also argues that his counsel rendered ineffective assistance with respect to Crawford at the petitioner's sentencing, but we need not address that argument in the present appeal in light of this court's decisions in *State* v. *Santiago*, supra, 318 Conn. 1, and *State* v. *Peeler*, supra, 321 Conn. 375.

[8] The state did allege, as part the aggravating factors it put forth in support of its case for applying the death penalty, that the petitioner committed the murder during the commission of an attempted sale of cocaine. That allegation related only to enhancement of the petitioner's sentence, not the crimes he was charged with committing.

[9] Indeed, such a claim would likely fail. We have held that the state is free to unilaterally choose to show leniency toward a witness, and doing so does not violate the defendant's due process rights. See *State* v. *Ferrara*, 176 Conn. 508, 513–15, 408 A.2d 265 (1979) (state's unilateral decision not to prosecute cooperating witness did not amount to deal that had to be disclosed to defense). Moreover, the legislature has specifically authorized the state to seek immunity from prosecution as a means to compel a witness' testimony. General Statutes § 54-47a.

[10] At the time of his trial testimony, Crawford had an unrelated charge of escape pending against him.

[11] The petitioner raises, in his brief, an independent claim alleging that the habeas court improperly concluded that it could not consider the cumulative effect of counsel's errors when considering whether those errors prejudiced the petitioner's defense. In support of this claim, the petitioner cites, among other cases, *Kyles* v. *Whitley*, 514 U.S. 419, 436, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995), and *Strickland* v. *Washington*, 466 U.S. 668, 695–96, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Having concluded that the performance of the petitioner's trial counsel was not deficient, however, we need not address this claim.